IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

RUFARO CHRISTOPHER SMITH,          *

     Plaintiff,                   *

vs.                                *

                                    CASE NO. 3:13-CV-12 (CDL)

CITY OF HARTWELL, *et al.*,         *

     Defendants.                  *

_____

O R D E R

Plaintiff Rufaro Christopher Smith ("Smith") was arrested and prosecuted for armed robbery. A jury found him not guilty. He now seeks damages from Defendants in this action claiming that Defendant Anthony Davis ("Davis"), a captain and chief investigator with the Hartwell Police Department, presented false information regarding the robbery to obtain an arrest warrant from a magistrate judge. He asserts claims against Davis and the City of Hartwell pursuant to 42 U.S.C. § 1983 ("§ 1983") based on the violation of his constitutional rights and under Georgia law based on false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress ("IIED"). Defendants filed a motion for summary judgment as to all of Smith's claims. Davis argues that he is entitled to qualified immunity as to Smith's § 1983 claims and official immunity on Smith's state law claims. The City of

Hartwell maintains that Smith's § 1983 claims against the City fail as a matter of law because there is no evidence of a practice, policy, or custom of the Hartwell Police Department that caused a violation of his constitutional rights. As explained below, the Court grants Defendants' Motion for Summary Judgment (ECF No. 14).

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Smith, the record reveals the following.[1]

---

[1] Smith has cited to certain deposition testimony of Davis, some of which he has failed to include in the summary judgment record;

On December 29, 2010, Davis, as chief investigator for the police department, investigated an armed robbery of a local convenience store that occurred that evening. At the scene, patrol officers and victims informed Davis that two black males entered the store wearing dark clothing and masks over their faces, that one of them pointed a silver handgun at the owner's face and demanded money, that the same one ordered the only customer to get down on the floor, and that the other one went behind the counter to grab the bag the owner had filled with cash. That same night at the scene, Davis watched the video recording from the store security camera and observed that it was consistent with the victims' eyewitness accounts. Because of the dark clothing and ninja-style ski masks, Davis did not see any other identifying features of the two black males other than their size in general. Davis observed that the individual who gave the orders held the silver handgun in his right hand and wore all black clothing and gloves. Davis observed that the individual who went behind the counter also grabbed a carton of cigarettes and wore a black jacket, black gloves, and blue jeans. The witnesses could provide no further information regarding the identity of the two robbers.

---

therefore, the Court does not consider Smith's assertions as to Davis's testimony without supporting evidence in the record.

On January 4, 2011, the owner of the store that had been robbed called Davis to give him the phone number of someone who had information about the robbery.  Davis called the number, and the person who answered came to the police station.  Because she did not have direct information herself, she put Davis in touch with the person with direct information about the robbery. Davis talked to this informant briefly over the phone, and the informant came to the station to be interviewed in person. Davis was familiar with the informant from a prior arrest but did not look into whether the informant had any criminal charges pending.  Davis Dep. 19:3-11, 40:10-19, ECF No. 17-5.  Davis did not discuss the resolution of any criminal charges pending against the informant during the interview.  Davis Aff. ¶ 21, ECF No. 14-1.[2] At some point during the interview, Davis recalls saying something like "how much is this going to cost me?" to the informant for the information.  Davis Dep. 26:16-27:21. Davis then obtained authority from the chief of police, Chief Reno, to compensate the informant $100.

Chief Reno did not ask whether Davis had checked the informant's criminal history.  *Id.* at 40:4-19.  According to Chief Reno, the police department has had an unwritten policy

---

[2]  Smith counters Davis's sworn statement by suggesting that the informant's charges were dismissed in exchange for providing the information to Davis, but Smith cites no evidence in the record that supports this assertion.  Pl.'s Resp. to Defs.' Statement of Material Facts ¶¶ 16-17, ECF No. 17-2.

for at least forty-one years of paying informants for information. Reno Dep. 9:8-14, ECF No. 17-4. Currently, an officer must obtain approval from Chief Reno to pay informants from a discretionary fund, and Chief Reno may choose to trust the officer's determination of the amount to compensate an informant. *Id.* at 8:16-9:7, 9:17-10:8, 12:7-22, 15:16-17:18. The discretionary account of $1,200 to $1,500 is funded by annual calendar ad sales and other donations and is also used to help officers temporarily cover utility and grocery bills. *Id.* at 10:9-12:6.

The informant provided "information on how the robbery was going to be laid out and take place," and identified Christopher Rufaro Smith and Detavious "Hammer" Saddler ("Saddler") as the participants. Davis Dep. 20:1-15. Specifically, the informant told Davis that he had a conversation with both of them the day of the robbery. Davis Aff. ¶¶ 17-20.[3] The informant told Davis that Smith asked the informant to participate in a robbery of the very store that was robbed later that evening and that the informant declined to participate. *Id.*[4] The informant described

---

[3] Smith denies having this conversation with the informant and Saddler because he did not know who either of them was at the time. Smith Aff. ¶ 5, ECF No. 17-6. However, Smith cites no evidence to contradict the fact that the informant told Davis about such a conversation.

[4] Smith denies any involvement in the robbery because he did not know why he had been arrested until afterward. Smith Aff. ¶ 7. However, Smith cites no evidence to contradict the fact that the informant told Davis about such a conversation.

to Davis how both Smith and Saddler planned the robbery together and described the dark clothing and masks and the silver handgun. *Id.*[5]

Davis provided all the information he had to a magistrate judge to obtain arrest warrants for Smith and Saddler. *Id.* ¶ 22.[6] Davis swore in arrest warrant affidavits that "to the best of [his] knowledge and belief" Smith and Saddler committed the armed robbery. Defs.' Mot. for Summ. J. Ex. 2, Warrant Nos. 11-729FW-A, 11-730FW-B, 11-731FW-C, ECF No. 14-3; Defs.' Mot. for Summ. J. Ex. 3, Warrant Nos. 11-732FW-A, 11-733FW-B, ECF No. 14-4; Davis Aff. ¶¶ 23-24. The magistrate judge found "sufficient cause[]" based on "the above affidavit[s] and from other oral testimony given under oath." Warrant Nos. 11-729FW-A, 11-730FW-B, 11-731FW-C; Warrant Nos. 11-732FW-A, 11-733FW-B. The magistrate judge signed the warrants, and Davis arrested Smith and Saddler pursuant to those warrants.

Saddler did not say anything to Davis about Smith the day of the arrests, but he later explained Smith's involvement. Davis Dep. 42:15-43:24. Saddler told Davis that Smith was the gunman and Saddler went behind the counter to grab the bag of money and a carton of cigarettes. At some point while Smith was

---

[5] Smith denies owning such a weapon, but cites no supporting evidence, such as a sworn statement.
[6] While Smith makes the legal argument that the information Davis had was insufficient to support a reasonable belief that probable cause existed, Smith cites no evidence to contradict that Davis provided that information to the magistrate judge.

in jail, Smith told Davis that he was innocent and offered to participate in a lie-detector test or a line-up, but Davis never came back to the jail to see him.   Smith Aff. ¶¶ 9-12, 16. Davis turned the case over to the Hart County District Attorney's Office, who presented the case to a grand jury.   The grand jury issued a bill of indictment charging Smith and Saddler with armed robbery and two counts of aggravated assault. A jury found Smith not guilty at his criminal trial.

DISCUSSION

Smith claims that Davis illegally arrested him pursuant to a warrant obtained by false information and without probable cause.   Smith seeks to hold Davis and the City of Hartwell liable for his unlawful arrest in violation of his Fourth Amendment rights under § 1983.   Because Smith claims that he was unlawfully seized pursuant to legal process, the arrest warrant, these claims are considered § 1983 malicious prosecution claims. *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (distinguishing a § 1983 false arrest claim from a § 1983 malicious prosecution claim, which "permits damages for confinement imposed pursuant to legal process"); *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003) (identifying malicious prosecution as a Fourth Amendment violation and viable § 1983 claim).   Smith also asserts various state law claims against Davis for his actions and against the City of Hartwell for Davis's actions as Davis's employer under

the theory of respondeat superior.   The Court will address Smith's federal claims and state law claims in turn.

## I.   Smith's § 1983 Claims Against Davis

Davis raises the defense of qualified immunity, which shields officers performing discretionary functions from § 1983 liability unless their conduct violates "clearly established" law. *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (explaining that qualified immunity protects "all but the plainly incompetent or one who is knowingly violating the federal law" (internal quotation marks omitted)).   "Once [an officer] establishes that he was acting within [the scope of] his discretionary authority, the burden shifts to the plaintiff to show that the [officer] is not entitled to qualified immunity." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).   In evaluating qualified immunity, courts are given the discretion to analyze (1) whether the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation "in whatever order is deemed most appropriate for the case." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 242 (2009)).   "To be clearly established, the contours of an asserted constitutional right

8

'must be sufficiently clear [from pre-existing law] that a reasonable official would understand that what he is doing violates that right.'" *Jones*, 174 F.3d at 1282 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Here, it is undisputed that Davis was acting within the course and scope of his official duties and authority as a captain and chief investigator with the Hart County Police Department when obtaining the arrest warrant. Pl.'s Resp. to Defs.' Statement of Material Facts ¶ 27; Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. 10, ECF No. 17. Smith argues that Davis is not entitled to qualified immunity (1) because Davis made false statements to obtain the arrest warrant, and (2) because Davis sought the arrest warrant without probable cause.

The Fourth Amendment prohibits an officer from making a false statement intentionally or with reckless disregard for the truth in order to obtain a warrant. *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994) (citing *Franks v. Delaware*, 438 U.S. 154, 156, 165-71 (1978)). The Eleventh Circuit has explained that a *Franks* violation is limited to perjurious or recklessly false statements made in support of a warrant and does not apply to negligent misrepresentations or omissions. *Id.* (citing *West Point-Pepperell, Inc. v. Donovan*, 689 F.2d 950, 959 (11th Cir. 1982)). Because "the difference between 'reckless' and merely 'negligent' disregard for the truth is not crystal clear,"

9

"[q]ualified immunity almost always protects" an officer absent evidence that the officer intentionally perjured himself. *Id.*; *see also Jones*, 174 F.3d at 1285 (noting that the law is clearly established "that the Constitution prohibits a police officer from *knowingly* making false statements in an arrest affidavit about the probable cause for an arrest" (emphasis added)).

Smith argues that Davis obtained the arrest warrant with false information from the informant's statements. Even if the Court were to assume the statements were actually false for the purposes of summary judgment only, Smith points to no evidence that Davis knew the informant's statements were false when he provided them to the magistrate judge. It is undisputed that Davis provided the information he had, including the informant's statements, to the magistrate judge in order to obtain an arrest warrant. Davis Aff. ¶ 22. The record shows that Davis paid the informant $100 for the information and did not check the informant's criminal history despite being aware of a prior arrest, Davis Dep. 19:3-11, 40:10-19, but the record also shows that the details provided by the informant were consistent with the security video, Davis Aff. ¶¶ 17, 20. Even construing all reasonable inferences in Smith's favor, the best that Smith can establish is that Davis *should have been skeptical* of the information he received from the paid informant. But no evidence exists from which a reasonable jury could conclude that

he actually *knew* the information was false or that he acted *recklessly* in his partial reliance on the information. Therefore, the Court cannot conclude that a reasonable officer would have known that reliance on this same information under similar circumstances when seeking an arrest warrant from a neutral magistrate would violate an individual's rights under the Fourth Amendment. *Kelly*, 21 F.3d at 1554. Because Smith cannot show that Davis's actions violated clearly established law, Davis is entitled to qualified immunity.

The Court also rejects Smith's argument that no reasonable officer in Davis's position would have concluded that probable cause existed for the arrest. Smith is correct that an officer is not entitled to qualified immunity if "a reasonably well-trained officer in [the defendant]'s position would have known that his [warrant application] failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345 (1986). But "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Id.* at 344-45 (citations omitted).

Smith argues that because the affidavit Davis submitted to the magistrate judge merely consisted of a conclusory assertion that Smith committed the crimes "to the best of [Davis]'s

knowledge and belief," Warrant Nos. 11-729FW-A, 11-730FW-B, 11-731FW-C, Davis's application for the arrest warrant clearly lacked probable cause. *See Garmon v. Lumpkin Cnty., Ga.*, 878 F.2d 1406, 1409-10 (11th Cir. 1989) (finding that an officer was not entitled to qualified immunity when he sought an arrest warrant based solely on a conclusory affidavit). Contrary to Smith's contention, Davis submitted more than a conclusory affidavit to the magistrate. The warrant explicitly states that the magistrate judge found sufficient cause based on the affidavit as well as "other oral testimony given under oath." Warrant Nos. 11-729FW-A, 11-730FW-B, 11-731FW-C. The record shows that Davis "provided the information [he] had to a Hart County Magistrate." Davis Aff. ¶ 22. Therefore, the relevant inquiry is whether a reasonably well-trained officer in Davis's position would have known that the information he possessed, which he ultimately provided to the magistrate through his affidavit and oral testimony, failed to establish probable cause. *Malley*, 475 U.S. at 345.

Smith points to no evidence to dispute that Davis provided the information he had to the magistrate judge; but rather, he argues that the information known to Davis at the time he sought the arrest warrant was not sufficient to support an objectively reasonable belief that probable cause for arrest existed. Probable cause for arrest exists "if the facts and circumstances

within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed . . . an offense." *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990); *see also Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997) (en banc) (noting that the facts and circumstances must be judged "with a common sense view to the realities of normal life"). To determine whether information provided by an informant is reasonably trustworthy enough to support probable cause, the Court evaluates a number of factors such as veracity, reliability, basis of knowledge, and corroboration of details by independent police work. *United States v. Gonzalez*, 969 F.2d 999, 1002-03 (11th Cir. 1992).

Several factors support Davis's reasonable reliance on the informant's statements. First, he voluntarily showed up at the police station in person, making himself directly accountable for his statements and putting himself at risk of negative consequences if his statements were deemed false. He was not an anonymous tipster. Second, he explained that he had a conversation directly with Smith and Saddler about robbing a certain store with a silver handgun and dark clothing and masks the same day that store was later robbed by two men in that manner. Davis Aff. ¶¶ 17-20. This information was based on the

informant's personal knowledge and corroborated other evidence discovered during the investigation. *Id.* ¶¶ 5-9, 17-20.

The Court finds that Davis acted in a reasonably prudent manner when he relied in part on the informant's statements in seeking the arrest warrant. It certainly cannot be found based on the present record that Davis violated clearly established law when seeking an arrest warrant based on that information. The information Davis had at the time he sought the arrest warrant was not "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley*, 475 U.S. at 344-45. Davis is therefore entitled to qualified immunity.

## II.  Smith's § 1983 Claims against the City of Hartwell

Smith claims that the City of Hartwell's unwritten policy permitting police officers to pay for information using money from a city account, without checking the informant's criminal record or the veracity or reliability of the statements beforehand, was the moving force behind the violation of his constitutional rights.[7] It is well established that a local government cannot be held liable under § 1983 for the official

---

[7] While Smith vaguely alleged that city policies relating to training and/or supervising its police officers caused constitutional violations, Compl. ¶ 43, ECF No. 1-1, Smith makes no mention of officer training or supervising in his response in opposition to summary judgment; therefore these claims are deemed abandoned. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc).

acts of its employees under a theory of respondeat superior;
rather, liability must be based on an official policy or custom.
*Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  For
*Monell* liability, a plaintiff must show "(1) that his
constitutional rights were violated; (2) that the municipality
had a custom or policy that constituted deliberate indifference
to that constitutional right; and (3) that the policy or custom
caused the violation."  *McDowell v. Brown*, 392 F.3d 1283, 1289
(11th Cir. 2004).

Here, Smith points to no evidence that the police
department's unwritten policy for paying informants caused a
Fourth Amendment violation or constituted deliberate
indifference to Fourth Amendment rights.  For over forty years,
the police department has allowed officers to pay informants for
information, Reno Dep. 9:8-14; yet Smith cites no other
instances of constitutional violations caused by this practice.
Smith focuses solely on the one instance in the record that
Chief Reno approved Davis's request to pay $100 for information
without first inquiring into the informant's criminal record.
Davis Dep. 40:4-19.  The alleged Fourth Amendment violations
occurred when Davis used the informant's information to obtain
the arrest warrant, not when he merely paid the informant for
the information.  There is no evidence in the record showing
that a policy allowing an officer to pay for information, even

15

if that policy does not explicitly require the chief or that officer to inquire as to the information's truthfulness or reliability *before* giving payment to an informant, would permit officers to *subsequently* fail to make such an inquiry before using that information to obtain an arrest warrant.

The record establishes that Davis regularly received training on arrests and probable cause by the Georgia Peace Officers Standards and Training Council (P.O.S.T.). Davis Aff. ¶ 2. Although Davis did not investigate the informant's criminal history, Davis did assess the reliability of the information he provided, which was corroborated by other evidence discovered by Davis during his investigation. *Id.* ¶¶ 17, 20. The record contains no evidence of a city policy which caused Davis to knowingly or recklessly give false statements to obtain an arrest warrant or to rely on a paid informant's statements to support probable cause without making any inquiry into their trustworthiness. Because Smith presents no evidence that its policy for paying informants caused the alleged Fourth Amendment violations or constituted deliberate indifference to such Fourth Amendment rights, the City of Hartwell is entitled to summary judgment as to this claim.

## III. Smith's State Law Claims

Smith asserts malicious prosecution claims against Davis for obtaining the arrest warrant with a total lack of probable

cause and against the City of Hartwell under the theory of respondeat superior.[8]   A malicious prosecution claim under Georgia law requires a plaintiff to show "(1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff." *Barnette v. Coastal Hematology & Oncology, P.C.*, 294 Ga. App. 733, 735, 670 S.E.2d 217, 220 (2008) (internal quotation marks omitted).

Assuming for the purposes of summary judgment only that Smith can establish the other five elements, Davis argues that there is no evidence in the record that could establish malice. Malice is defined as "personal spite or . . . a general disregard of the right consideration of mankind, directed by chance against the individual injured." *Franklin*, 236 Ga. App. at 470-71, 512 S.E.2d at 356 (citing O.C.G.A. § 51-7-2). Malice may be inferred from a total lack of probable cause; however, evidence of malice cannot rely solely on "proof of the want of probable cause [if] that proof shows some circumstances pointing

---

[8] While Smith also alleged state claims for false arrest and false imprisonment, Compl. ¶¶ 47-55, Smith abandons these claims and concedes that he may proceed only with his malicious prosecution claims. Pl.'s Resp. 14-17; *see also Franklin v. Consol. Gov't of Columbus, Ga.*, 236 Ga App. 468, 470, 512 S.E.2d 352, 355 (1999) (explaining that when "detention [is] effectuated pursuant to procedurally valid process, such as an arrest warrant[,] action for malicious prosecution is the only remedy").

to the guilt of the accused." *Id.* at 471, 512 S.E.2d at 356 (affirming summary judgment in favor of defendants for lack of evidence showing malice).

Here, Smith argues that malice can be established by a total lack of probable cause but points to no evidence from which a reasonable jury could find such a complete lack of probable cause. As previously explained, Davis did not act unreasonably when he relied on the informant's information in his assessment of probable cause, and that evidence combined with other evidence discovered during the investigation supported his conclusion that probable cause existed for the arrest. Because there is evidence that Davis had *some* information "pointing to the guilt of the accused," this evidence cannot show a *total* want of probable cause from which to infer malice. *Franklin*, 236 Ga. App. at 471, 512 S.E.2d at 356. Accordingly, Smith's malicious prosecution claims against Davis and the City of Hartwell fail.

Smith's IIED claims suffer from a similar deficiency. To establish an IIED claim, Georgia law requires that Smith demonstrate that Davis's wrongful conduct was (1) intentional or reckless; (2) extreme and outrageous; and (3) the cause of Smith's severe emotional distress. *Jones v. Fayette Family Dental Care, Inc.*, 312 Ga. App. 230, 231, 718 S.E.2d 88, 90 (2011). Having previously found a lack of malice by Defendants

18

and further finding that no evidence exists from which a reasonable jury could conclude that Davis acted unreasonably in seeking Smith's arrest, the Court certainly cannot conclude that a reasonable jury could find that Davis's actions were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 232, 718 S.E.2d at 90 (internal quotation marks omitted). Davis and the City of Hartwell are entitled to summary judgment as to Smith's IIED claims.

                              CONCLUSION

    For the reasons set forth above, Defendants are entitled to summary judgment on all claims against them, and Defendants' Motion for Summary Judgment (ECF No. 14) is granted.

    IT IS SO ORDERED, this 15th day of April, 2014.

                         S/Clay D. Land
                         _____
                              CLAY D. LAND
                         UNITED STATES DISTRICT JUDGE